ATTORNEYS FOR APPELLANT
Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

David Steiner
Frances Barrow
Lara Langeneckert
Elizabeth M. Littlejohn
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE WINES & SPIRITS
DISTRIBUTORS OF INDIANA
Michael P. Maxwell
John B. Herriman
Clark, Quinn, Moses, Scott & Grahn, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE INDIANA BEVERAGE
ALLIANCE
Steven M. Badger
Leah Seigel
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Brian J. Paul
A. Scott Chinn
Anne K. Ricchiuto
Stephanie L. Boxell
Faegre Baker Daniels LLP
Indianapolis, Indiana

Kannon K. Shanmugam
Amy Mason Saharia
Katherine Moran Meeks
Williams & Connolly LLP
Washington, D.C.



FILED

Jul 21 2017, 4:00 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S00-1611-PL-614

INDIANA ALCOHOL AND TOBACCO
COMMISSION,

*Appellant (Respondent below),*

v.

SPIRITED SALES, LLC,

*Appellee (Petitioner below).*

Appeal from the Marion County Superior Court, No. 49D01-1502-PL-5520
The Honorable Heather Welch, Special Judge

**July 21, 2017**

**David, Justice.**

This is an expedited appeal of a trial court's order setting aside the Indiana Alcohol and Tobacco Commission's denial of Spirited Sales, LLC's application for a liquor wholesaler's permit. The order directed the Commission to issue the requested permit. We find that the Commission's denial conformed to the statute's plain language, and the Commission did not act arbitrarily or capriciously in initially denying the applicant's request. We further find that the Commission's denial was not based on political grounds, and we decline Spirited's invitation to affirm the trial court on constitutional grounds. Thus, we reverse the trial court's order directing the Commission to issue the applicant a liquor wholesaler's permit, and we reinstate the Commission's order denying the permit.

**Facts and Procedural History**

Like many states, Indiana has an alcoholic beverage regulatory system, dividing distribution into three distinct tiers – manufacture, wholesale, and retail. Monarch Beverage Co. v. Cook, 48 N.E.3d 325, 328 (Ind. Ct. App. 2015). Within each tier, licenses are issued separately for beer[1], wine[2], and liquor[3]. Among the many "interest restrictions" outlined in Indiana's regulatory scheme, a pair of provisions prohibiting the holder of a beer wholesaler's permit from having an interest in a liquor wholesaler's permit, and vice-versa, are at issue here.

In September 2013, Spirited Sales, LLC ("Spirited"), an aspiring liquor wholesaler, applied to the Indiana Alcohol and Tobacco Commission for a liquor wholesaler's permit. Spirited is registered in Delaware as a limited liability company. It is wholly owned by a parent company called E.F. Transit, Inc. ("EFT"), which transports beer, wine, and liquor throughout

---

[1] See Ind. Code §§ 7.1-3-2-1; 7.1-3-3-1; 7.1-3-4-1.
[2] See Ind. Code §§ 7.1-3-12-1; 7.1-3-13-1; 7.1-3-14-1.
[3] See Ind. Code §§ 7.1-3-7-1; 7.1-3-8-1; 7.1-3-9-1.

the state. EFT's ownership consists of five shareholders[4]. The same five shareholders also wholly own Monarch Beverage Company, Inc. ("Monarch"), an Indiana company that holds a beer and wine wholesaler's permit.

On December 16, 2014, after holding a public hearing at Spirited's request, the Commission's Executive Secretary, acting as hearing judge, issued findings of fact and conclusions of law, recommending that Spirited's application be denied. The recommendation noted that, despite some separation of business formalities, EFT and Monarch "operated as the same company" and further found that a liquor wholesaler like Spirited, "entering into a contract with EFT, would in reality be entering into a contract with Monarch." Appellee's App. Vol. IX at 172. On January 20, 2015, the Commission adopted the proposed findings and conclusions, thus denying Spirited's application.

Spirited then filed a petition in Marion Superior Court seeking judicial review of the Commission's denial under the Administrative Orders and Procedures Act, Indiana Code Section 4-21.5-5-1 et seq., and the alcoholic beverages permitting statute, Indiana Code section 7.1-3-23-30. On August 24, 2016, the trial court issued an order granting Spirited's petition. The trial court order set aside the Commission's order denying the permit and it directed the Commission to issue Spirited a liquor wholesaler's permit. The trial court found that, in light of previous Commission decisions that cited to the corporate separateness doctrine in support of granting a permit to businesses whose owners held interests prohibited by statute, the Commission's denial of Spirited's application for a liquor wholesaler's permit was arbitrary and capricious. The trial court also found that Spirited's other arguments were consequently moot and did not warrant being addressed.

The Commission then filed a Notice of Appeal and moved the trial court to stay its order, pending appeal. After briefing and a hearing, the trial court denied the stay motion on September 23, 2016. To avoid any risk of contempt, the Commission issued Spirited a letter of authority that same day, and then issued the permit on September 28, 2016. Thereafter, the Commission

---

[4] EFT's five shareholders are: 1) the Edwin T. French, Jr. Marital Trust, 2) the 2000 Irrevocable Monarch Trust for Edwin T. French III, 3) the 2000 Irrevocable Monarch Trust for Gail Anne French Pheffer, 4) Edwin T. French III, and 5) Gail Anne French Pheffer.

sought a stay from the Court of Appeals, which was summarily denied on October 25, 2016 by a divided panel.

On October 31, 2016, the Commission filed motions seeking: 1) emergency transfer to this Court, pursuant to Appellate Rule 56(A), and 2) a stay of the trial court's order. Having considered the parties' submissions and being duly advised, we granted the Commission's motion for transfer pursuant to Appellate Rule 56(A). Thus, the matter proceeded in this Court as if originally filed here. However, we denied the motion to stay the trial court's order pending appeal.

## Standard of Review

We review an administrative action using the guideposts set forth in Indiana's Administrative Orders and Procedures Act, under which we may set aside an agency's action if it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d).

A party seeking judicial review bears the burden of proving the agency action is invalid for one of the above reasons. Ind. Code § 4-21.5-5-14(a). "Our review of agency action is intentionally limited, as we recognize an agency has expertise in its field and the public relies on its authority to govern in that area." West v. Office of Indiana Sec'y of State, 54 N.E.3d 349, 352–53 (Ind. 2016) (citing Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n, 695 N.E.2d 99, 105 (Ind. 1998)). When reviewing a challenge to an administrative agency's decision, we will not try the facts *de novo*, nor substitute our own judgment for that of the agency. Jay Classroom Teachers Ass'n v. Jay Sch. Corp., 55 N.E.3d 813, 816 (Ind. 2016) (internal citations and quotations omitted). Rather, we defer to the agency's findings if they are supported by substantial evidence. Id. (citing Ind. Dep't of Envtl. Mgmt. v. West, 838 N.E.2d 408, 415 (Ind. 2005)). On the other hand, an agency's conclusions of law are ordinarily reviewed *de novo*. Id. (citing Nat. Res. Def. Council v. Poet Biorefining–N. Manchester, LLC, 15 N.E.3d 555, 561 (Ind. 2014)).

4

**Discussion**

At issue is whether a privately held limited liability company may be granted a liquor wholesaler's permit, pursuant to Title 7.1 of the Indiana Code, when it is wholly owned by another company, which shares directors, officers, and all shareholders with the holder of a beer wholesaler's permit. The Commission found the permittee, Spirited, ineligible for a liquor wholesaler's permit, but the trial court reversed and ordered the permit be granted. The Commission now argues that it properly relied on the plain language of relevant statutes in rejecting Spirited's application. Specifically, the Commission argues that Title 7.1 cannot plausibly be understood to allow Monarch, Spirited, EFT, and its overlapping ownership to hold or have interests in both liquor and beer wholesaler permits.

Spirited answers by asking us to uphold the trial court's reversal of the Commission's denial. Spirited argues that the Commission's unexplained departure from its own long-standing precedent demonstrates that its denial was arbitrary and capricious. Nothing in the statute's text, according to Spirited, compels the Commission to deny a permit in the circumstances presented here. Spirited also proposes alternative grounds on which we may affirm the trial court, which include impermissible political grounds for the denial and constitutional violations. We find none of Spirited's arguments for upholding the trial court's order persuasive.

**I.     The Commission's denial of Spirited's application for a liquor wholesaler's permit conforms with statutory provisions in Title 7.1.**

Our standard of review compels us to begin this analysis by first determining whether the statute's language can only be understood to mean something other than what the Commission decided. In other words, we ask whether the statute was clear on its face. Here, the Commission's interpretation of the relevant statute resulted in the denial of Spirited's application for a liquor wholesaler's permit because Spirited was deemed ineligible by virtue of its interest in a beer wholesaler's permit. We find that the statute is clear on its face and the Commission followed the statute's unambiguous language.

Our goal in statutory interpretation is to determine and abide by the legislature's intent. Moryl v. Ransone, 4 N.E.3d 1133, 1137 (Ind. 2014). In doing so, we aim "to determine and give effect to the intent of the legislature." State v. Int'l Bus. Machs. Corp., 964 N.E.2d 206, 209

5

(Ind. 2012). "We start with the plain language of the statute, giving its words their ordinary meaning and considering the structure of the statute as a whole." West, 54 N.E.3d at 353. No word or part of the statute should be rendered meaningless if it can be reconciled with the rest of the statute. Id. (citing Siwinski v. Town of Ogden Dunes, 949 N.E.2d 825, 828 (Ind. 2011)). As we interpret the statute, we are mindful of both "what it 'does say' and what it 'does not say.'" Day v. State, 57 N.E.3d 809, 812 (Ind. 2016) (quoting State v. Dugan, 793 N.E.2d 1034, 1036 (Ind. 2003)). To the extent ambiguity exists, we determine and give effect to the intent of the legislature as best it can be ascertained. ESPN, Inc. v. Univ. of Notre Dame Police Dep't, 62 N.E.3d 1192, 1196 (Ind. 2016) (citing Moryl, 4 N.E.3d at 1137). We may not add new words to a statute which are not the expressed intent of the legislature. Kitchell v. Franklin, 997 N.E.2d 1020, 1026 (Ind. 2013).

In addition to our well-established statutory interpretation precedent, Indiana's alcohol statutes provide additional interpretive guidance. Specifically, Indiana Code section 7.1-1-2-1 directs us to construe the provisions of Title 7.1 "liberally . . . so as to effectuate the purposes of [the] title."

Turning to the relevant statute, Indiana has an extensive statutory scheme regulating the manufacture, sale, possession, and use of alcohol. See Ind. Code § 7.1-1-1-1 et seq. In fact, Indiana is not alone in such a scheme – following the passage of the Twenty-First Amendment to the United States Constitution, which repealed the federal prohibition on alcohol, states throughout the country adopted a tiered system for regulating alcoholic beverages. Indiana's scheme includes implementation of a three-tiered system. Our first tier consists of alcoholic beverage manufacturers, which include brewers, vintners, and distillers. See Ind. Code §§ 7.1-3-2-7, 7.1-3-7-7, 7.1-3-12-5. These manufacturers produce alcoholic beverages and sell them to the second tier of the scheme: the wholesalers. See Ind. Code §§ 7.1-3-3-5, 7.1-3-8-3, 7.1-3-13-6. Finally, the third tier is made up of retailers and dealers (e.g. package liquor stores, grocery stores, restaurants, and bars) who purchase from the wholesalers and sell directly to the consumer. See Ind. Code §§ 7.1-3-4-6, 7.1-3-9-9, 7.1-3-14-4. This particular case involves only licensing within the second tier – wholesaling.

6

Title 7.1's purposes include "[t]o protect the economic welfare, health, peace, and morals of the people of this State . . . [and] [t]o regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages." Ind. Code § 7.1-1-1-1. The legislature accomplished this goal, in part, by implementing both vertical and horizontal interest segregation via a selective issuance of permits. As to vertical integration restrictions, entities operating in one tier may not, absent limited exceptions, hold an "interest" in a permit to operate in another tier. See Ind. Code §§ 7.1-5-9-2, 7.1-5-9-4, 7.1-5-9-6 to 10. This restriction prevents what is known as "tied houses," which are thought to promote a business culture of maximizing the sale of alcoholic beverages without regard for the impact such sales have on the public. The existing horizontal integration restrictions, on the other hand, call for licenses or permits to be issued separately within each tier for each of the three alcoholic beverages – beer, wine, and liquor. See Ind. Code §§ 7.1-3-3-1; 7.1-3-8-1; 7.1-3-13-1.

Title 7.1 also contains a variety of other restrictions limiting relationships between permit holders. Unique to Indiana, and central to the issue at hand, Title 7.1 restricts a beer wholesaler permit holder's ability to also hold an interest in a liquor wholesaler's permit, and vice-versa. Specifically, Indiana Code section 7.1-5-9-3(b), makes it "unlawful for the holder of a brewer's or beer wholesaler's permit to have an interest in a liquor permit of any type," while Indiana Code section 7.1-5-9-6 makes it "unlawful for the holder of a distiller's, rectifier's, or liquor wholesaler's permit to have an interest in a beer permit of any type." These statutory restrictions on permit holder relationships are referred to as "prohibited interest laws" by the parties. Henceforth, we shall do the same.

Pursuant to these prohibited interest laws, and in light of the links between Spirited and Monarch's ownership, the Commission denied Spirited's application for a liquor wholesaler's permit. The Commission argues that its denial was appropriate because the statute's plain language calls upon the Commission to base its permitting decisions on the interests of natural persons, not just paper entities. We are, thus, tasked with determining whether the Commission's denial indeed conformed to the statute's plain language.

As already mentioned, we think the pertinent statutes – namely sections 7.1-5-9-3(b) and 7.1-5-9-6 of Title 7.1 – are clear on their face. These two sections unequivocally prohibit the

holder of a brewer's or beer wholesaler's permit from having an interest in a liquor wholesaler's permit, and the reverse is also true. That leaves two questions for us to resolve before proceeding with our analysis. First, we must answer who exactly is a permit "holder" under our facts. And second, we must decide what constitutes an "interest."

As to the first question, we find that in this case, the "holder" of a beer wholesaler's permit can only be Monarch. The legislature did not define "holder," but the statute's plain language convinces us that it simply refers to the entity to whom the permit is directly issued. As read by this Court, a "holder" means the person or entity in possession of the permit. Thus Spirited, who was merely applying for a permit at the time of the denial, could not be considered the holder of any permit. Likewise, EFT and its shareholders would not be deemed holders of a permit. A broader definition of holder – one in which stakeholders may also be deemed to be holders of a permit – would not make sense given provisions in other sections of the alcohol regulatory scheme. After all, Title 7.1 allows for the "holder of a beer wholesaler's permit [to] purchase and import . . . and sell at wholesale, beer and flavored malt beverages." Ind. Code § 7.1-3-3-5. Surely, Monarch's shareholders cannot, on their own, begin importing beer or malt beverages to sell at wholesale by virtue of their stake in an entity that possesses a beer wholesaler's permit.

As to the second question, we find the word "interest" has a broad scope, encompassing more than just an entity that directly possesses the permit. The legislature seemed to intentionally use "interest" instead of "holder" when it sought to achieve a broader prohibition. We need not look further than the section in question to find an example where the legislature used the two terms in relation to one another. Indiana Code section 7.1-5-9-3 states that "it is unlawful for the *holder* of a . . . beer wholesaler's permit to have *an interest* in a liquor permit of any type." (emphasis added). For reference, we look at another provision where the legislature only referred to an entity with an interest. In section 7.1-5-9-9, the legislature made it "unlawful for a person who has *an interest* in a liquor wholesaler's permit to . . . possess *an interest of any type* in a liquor dealer's or retailer's permit." (emphasis added). We find that the legislature thoughtfully chose to use the word "interest" in places where it wanted to express a much broader prohibition than being in possession of a permit.

8

In light of our broad construction of the word "interest," and our finding that the language of the pertinent sections is clear on its face, we now turn to the Commission's application of the statute. The Commission found that granting Sprited's application ran afoul of both sections 7.1-5-9-3(b) and 7.1-5-9-6. In doing so, the Commission looked into both Spirited and Monarch's business dealings – a function permitted by statutory language, which gives the Commission power to "ascertain the business relationships . . . between permittees [and] to regulate or prohibit a practice, relationship, or dealing by or between permittees, which in the judgment of the [C]ommission is inimical to or a violation of a provision of [Title 7.1] . . ." Ind. Code § 7.1-2-3-22. The Commission also assessed whether said business dealings made granting Spirited's application either directly or indirectly hostile to, or in violation of, a Title 7.1 provision. In performing the assessment, the Commission looked upward toward both Spirited and Monarch's business "family trees," specifically delving into the nature of each entity's ownership structure. Such inquiry, we find, is permitted by section 7.1-2-3-22 and required for section 7.1-1-2-5, which provides that "whenever a person is prohibited from . . . holding a certain interest directly, he shall be prohibited also from . . . holding that interest indirectly."

Having reviewed the record, we agree with the Commission's findings and hold that a denial of Spirited's application conformed to the plain language of the statute, which is clear on its face. The business relationships between Spirited and Monarch first ran afoul of the prohibited interest statutes through Spirited's sole member, EFT. Given section 7.1-1-2-5's language, EFT was expected to meet the same qualification requirements for a liquor wholesaler's permit imposed on Spirited. In other words, EFT had to be clear of any prohibited interests, whether directly or indirectly, such that granting Spirited's permit would not violate any provision of Title 7.1.

Here, ties between EFT and Monarch were so extensive that EFT could reasonably be deemed to hold an interest in a beer wholesaler's permit – an interest prohibited by a combined reading of sections 7.1-5-9-6 and 7.1-1-2-5. Monarch was incorporated and began its operations in 1947. The record demonstrates that in 1996, Monarch's management created EFT to take advantage of certain favorable tax regulations. Since then, EFT has handled Monarch's trucking operations as a "public for-hire fleet." Appellee's App. Vol. XIII at 192. EFT helps Monarch distribute alcoholic beverages by receiving and warehousing products, managing inventory,

sorting and delivering, and collecting invoices. Monarch also sublets a facility from EFT, serves as EFT's guarantor, is EFT's primary customer, and is the source of almost all of EFT's business. Additionally, Monarch and EFT share a CEO, a board of directors, and many employees. This was not just the case of two separate entities conducting close business transactions. Here, the lines between Monarch and EFT were quite blurred, making a conclusion that Monarch and EFT were practically one in the same a reasonable inference. Thus, given the extent of these ties, Spirited's permit was barred by virtue of EFT's interest in a beer wholesaler's permit.

Likewise, Monarch and Spirited's overlapping ownership also bars Spirited from obtaining the sought-after permit. It is undisputed that Spirited's ownership consisted of a sole member – EFT. EFT, itself a corporation, had a total of five shareholders representing a 100 percent ownership stake in Monarch, the holder of a beer wholesaler's permit. As such, Monarch's five-shareholders, whom pursuant to sections 7.1-3-21-5(c) and 7.1-1-2-5 were required to meet the same qualification requirements imposed on Monarch, would invariably hold an impermissible interest in Spirited's liquor wholesaler's permit if it were granted. Thus, the Commission was also justified in denying Spirited the permit on this ground.

Ultimately, a broad construction of the statute's provisions, as the legislature has guided us to perform, convinces us that the Commission's denial of a liquor wholesaling permit conformed with the language in Title 7.1, which we find is clear on its face. We find that Monarch, as the holder of a beer wholesaler's permit, was prohibited from holding an interest in a liquor wholesaler's permit. Likewise, a prospective liquor wholesaler's permit holder like Spirited was prohibited from holding an interest in a beer wholesaler's permit. In analyzing both Spirited and Monarch's business organization "family tree," the Commission reasonably concluded that both sections 7.1-5-9-3 and 7.1-5-9-6 preclude it from granting a liquor wholesaler's permit to Spirited. Without more, we cannot find that the Commission's denial did not conform with the language of 7.1, which we reiterate is clear on its face.

## II.     The Commission's denial of Spirited's application was neither arbitrary nor capricious.

Spirited urges us to uphold the trial court's reversal of the Commission's denial because the Commission acted arbitrarily and capriciously in denying Spirited's application. Spirited

maintains that the Commission's unexplained departure from its own precedent is proof that its denial was arbitrary and capricious. We disagree.

In addition to our standard of review, which allows a reviewing court to set aside an agency's decision where it is deemed arbitrary and capricious, Ind. Code § 4-21.5-5-14(d), Title 7.1 further provides relief from Commission decisions that are made arbitrarily and capriciously. Where an applicant for a wholesaler's permit is aggrieved by a denial of a wholesaler's permit, the applicant may secure a review of the Commission's determination by appealing to the Marion Superior Court, which may reverse if the denial was made on arbitrary, capricious, or political grounds. Ind. Code § 7.1-3-23-31. A decision is deemed arbitrary and capricious when it is "patently unreasonable and is made without consideration of the facts and in total disregard of the circumstances. . . ." A.B. v. State, 949 N.E.2d 1204, 1217 (Ind. 2011) (internal quotations omitted). Such a decision will also lack any basis which might lead a reasonable person to the same conclusion. Id. In other words, "[a]n action of an administrative agency is arbitrary and capricious only where there is no reasonable basis for the action." Breitweiser v. Ind. Office of Envtl. Adjudication, 810 N.E.2d 699, 702 (Ind. 2004).

As already discussed, the Commission's denial was grounded in statutory language that is clear on its face, therefore it cannot be said that there was no reasonable basis for the action. Spirited's permit was denied because Title 7.1 prohibits the holder of a beer wholesaler's permit from holding an interest in a liquor wholesale permit, and vice versa. In assessing Spirited's various business relationships, the Commission determined that the overlap in ownership between Monarch and Spirited would be such that Spirited's sole member, EFT, would hold an interest in both a beer wholesaling permit and a liquor wholesaling permit if Spirited were to be granted the permit. That determination was justified in light of our reading of the pertinent Title 7.1 provisions.

Furthermore, the Commission's supposed unexplained departure from its own precedent has no bearing on whether the denial was arbitrary and capricious. In Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n., we plainly held that prior inconsistent actions are irrelevant. 758 N.E.2d 34, 38 (Ind. 2001). Our Court found that "[i]f the basis for denial is a failure to meet a requirement of the governing ordinance, albeit *one previously enforced laxly or not at all*, the inquiry is not whether there are prior inconsistent decisions, but rather whether

11

there is substantial evidence supporting the agency's decision." Id. at 38-39 (emphasis added). Here, the Commission simply did what the alcohol statutes required it to do, and there was substantial evidence to support that decision. Under our Equicor holding, such action cannot be said to be arbitrary and capricious.

**III.     This Court is not persuaded to affirm the trial court on any of the alternative theories Spirited proposes.**

As an alternative to its argument that the Commission acted arbitrarily and capriciously, Spirited offers three separate theories on which we may affirm the trial court's order. We find none of these theories sufficiently persuasive so as to convince us to uphold the trial court's reversal. To the extent necessary, we now address Spirited's three final arguments.

### a.     The Commission's denial was not based on "political grounds."

Spirited first urges us to find that the Commission unlawfully denied the permit application based on "political grounds," in violation of Indiana Code section 7.1-3-23-30. Section 7.1-3-23-30 prohibits the Commission from "deny[ing], fail[ing] to renew, or revok[ing] a wholesaler's permit of any type on arbitrary, capricious, or political grounds." In reversing the Commission's denial of Spirited's permit, the trial court made factual findings in support of its conclusion that the Commission's denial was impermissibly based on political grounds. Among other things, the trial court made factual findings that Monarch was a "disfavored" wholesaler, that the governor's office interfered with permit applications it associated with Monarch, and that Monarch and Spirited's competitors engaged in *ex parte* communications with the Commission and the governor's office. In response, the Commission argues that "political grounds" has a narrow meaning, which includes denials based only on "patronage" or "political affiliation" – neither of which occurred here. The Commission also argues that, even if we find the meaning of "political grounds" is not as narrow as it proposes, the trial court's factual findings do not support the conclusion that political grounds were the basis for the Commission's denial.

We're persuaded by the Commission's second argument; the trial court's factual findings fail to demonstrate that the Commission's decision was made on political grounds of any kind. While the trial court cites communications from a 2009 proceeding involving EFT, those proceedings occurred under a gubernatorial administration other than the one in control when Spirited's permit was denied. Furthermore, most of the key people involved in the 2009

12

communications were no longer with the governor's office by the time the application was filed in 2013. By the time the Commission voted on Spirited's application in January 2015, the Executive Secretary was new and only one commissioner remained from the prior administration. Nothing in the record strikes us as supporting a finding that political grounds induced the Commission to deny the permit.

### b. The denial does not violate Indiana's Equal Privileges and Immunities Clause.

Next, Spirited proposes that we find the Commission's differential treatment violated the Equal Privileges and Immunities Clause of the Indiana Constitution. The Commission urges us to find Spirited's claim is barred by res judicata, but we're not convinced such a bar exists here. Res judicata applies when "a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies." McClanahan v. Remington Freight Line, Inc., 517 N.E.2d 390, 394 (Ind. 1988). In Cook, 48 N.E.3d at 325, Monarch raised an Equal Privileges and Immunities claim, but that claim was not the same one we see here. Whereas in Cook, a "facial" challenge was raised, irrespective of the parties and specific circumstances, here the challenge is "as applied" and is based on the allegation that the Commission respected corporate separateness in some cases, but did not do so in this particular case. We find this argument is new.

However, the argument, nonetheless, fails on its merits. The Equal Privileges and Immunities Clause can be violated in two ways. First, when disparate treatment is not "reasonably related to inherent characteristics which distinguish the unequally treated classes." Myers v. Crouse-Hinds Div. of Cooper Indus., Inc., 53 N.E.3d 1160, 1165 (Ind. 2016). And second, when preferential treatment is not "uniformly applicable and equally available to all persons similarly situated." Id. Spirited alleges a violation of only the second prong. Although we agree that the Commission engaged in preferential treatment by recognizing corporate separateness for some companies, but not for others, a review of prior Commission decisions outlined by Spirited reveals that none of the entities involved in prior decisions were similarly situated to Spirited. As compared to the other entities, Spirited is a distinct type of business, had separate licensing requirements, and provides different services. These distinctions convince us that no Equal Privileges and Immunities violation occurred here.

13

*c. Spirited fails to show that the Commission's denial violates the Due Process Clause of either the U.S. or Indiana Constitutions.*

We disagree with Spirited's claim that the Due Process Clauses of the United States and Indiana Constitutions were violated. Spirited argues that once the State creates a statutory entitlement to a hearing, as Indiana did here, due process requires that it be fair. See Ind. Code §§ 7.1-3-23-32, 7.1-3-23-33. Even accepting Spirited's premise, we find the hearing Spirited was afforded was fair.

Spirited's claim of procedural due process deficiency is merely a rehashing of its claim that the Commission's denial was arbitrary and capricious, and that the denial was based on political grounds. We have already addressed those claims, concluding that the Commission's denial was neither arbitrary nor capricious, and we further found that the denial was not based on political grounds. Therefore, Spirited's argument that irregularities in the process deprived it of a fair hearing is without merit.

To the extent Spirited also argues it has a due process claim arising from the permit itself, this claim also fails. The U.S. Supreme Court has held that the standard elements of a due process claim include whether the plaintiff suffered a deprivation of a cognizable property or liberty interest, and whether any such deprivation occurred without due process. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "To establish a protectable property interest, a plaintiff must be able to point to a substantive state-law predicate creating that interest." Omosegbon v. Wells, 335 F.3d 668, 674 (7th Cir. 2003). "The interest must be more than *de minimis*, which typically calls on the plaintiff to demonstrate some form of provable pecuniary harm." Id. Our own Court has echoed the federal courts in that "[t]o have a property interest in a benefit, a person *clearly* must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Commissioner of Indiana Bureau of Motor Vehicles v. Vawter, 45 N.E.3d 1200, 1210 (2015) (quoting Bd. Of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Under such guidance, Spirited cannot claim that it has an interest in the permit because permittees have no property right in any permit the Commission issues. Ind. Code § 7.1-3-1-2 (providing that "[a] permitee shall have no property right in a wholesaler's, retailer's, or dealer's permit of any type"). In other words, no inherent property right in a liquor permit exists because

the issuance or revocation of such permit is within the power of the Legislature to prescribe. State ex rel. Indiana Alcoholic Beverage Comm'n v. Superior Court of Marion Cty., 233 Ind. 563, 565, 122 N.E.2d 9, 10 (1954).

Given that we find no irregularities in the process afforded to Spirited, and we otherwise find Spirited has no cognizable property interest in a permit, we need not explore Spirited's constitutional claims further.

In sum, because none of the alternative theories Spirited proposes compel us to uphold the trial court's reversal, we decide this issue based on our finding that the Commission's denial was tethered to the mandates of the statute's unambiguous language and nothing else.

**Conclusion**

The Twenty-First Amendment to the United States Constitution authorizes States to regulate the production, distribution, and sale of alcoholic beverages. There can be no doubt that Indiana is empowered to do what the Commission has urged here – which is to bar companies with same ultimate owners from simultaneously holding both beer and liquor-wholesaler permits. However, over the years, Indiana's alcohol code has become diluted, reflecting many policy choices and resulting amendments, dating back to the 1930s.

Nonetheless, we have not measured any public policy considerations or assessed the efficacy of prohibited interest laws on the goals outlined by the statute – doing so would be inappropriate. We recognize that businesses have long lobbied this very contentious point before our General Assembly, and will likely continue to do so, but deciding whether the regulatory scheme in place is still relevant or still necessary or in need of overhaul are matters to be resolved through the political process, which we trust would take into account the policy arguments made by opposing sides on this issue.

As for today's decision, it rests purely on our interpretation of the statute's language, which we believe is clear on its face. We hold the Commission's denial conformed with the clear and unambiguous language of the statute. We further hold that the Commission did not act arbitrarily or capriciously in initially denying the applicant's request. Finally, we hold that the Commission's denial was not based on political grounds and we decline Spirited's invitation to

15

affirm the trial court on constitutional grounds. Accordingly, we reverse the trial court's order directing the Commission to issue the applicant a liquor wholesaler's permit, and we reinstate the Commission's order denying the permit.

Rush, C.J., and Slaughter, J., concur.

Massa, J., not participating.