

**FILED**

Mar 29 2019, 6:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ann C. Coriden
Coriden Glover, LLC
Columbus, Indiana

ATTORNEYS FOR AMICUS CURIAE
LIBERTY MUTUAL INSURANCE

Kevin D. Koons
Jennifer L. Watt
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cathy Jo Robertson,

*Appellant-Defendant,*

v.

State of Indiana ex rel. Curtis T. Hill, Jr., Attorney General of Indiana,

*Appellee-Plaintiff,*

Ronald Bloemer, Auto-Owners Insurance Company, and OneBeacon Insurance Company,

*Defendants.*

March 29, 2019

Court of Appeals Case No. 18A-PL-1002

Appeal from the Jennings Superior Court

The Honorable Roger L. Duvall, Special Judge

Trial Court Cause No. 40D01-1705-PL-67

**Najam, Judge.**

## Statement of the Case

Cathy Jo Robertson appeals the trial court's denial of her Indiana Trial Rule 12(B)(6) motion to dismiss a complaint to recover public funds filed by the Office of the Indiana Attorney General ("OAG"), which alleged that Robertson had diverted public funds from Jennings County for her personal gain during her tenure as a bookkeeper for the Clerk of the Circuit Court of Jennings County ("the Clerk's Office").[1] Robertson raises one issue for our review, namely, whether the trial court erred when it denied her motion to dismiss the OAG's complaint on the ground that the complaint had been filed outside the two-year statute of limitations.[2] Because we hold that the two-year limitations period did not begin to run until after the OAG received the final, verified report of the Indiana State Board of Accounts ("SBOA"), and because the OAG's complaint against Robertson was filed within two years of the OAG having received the final report, we affirm the trial court's denial of Robertson's motion to dismiss.

## Facts and Procedural History

In 2014, the SBOA conducted a special investigation of the records of the Clerk's Office. The SBOA's investigation was limited to a review of records

---

[1] Ronald Bloemer, Auto-Owners Insurance Company, and OneBeacon Insurance Company, named defendants below, do not participate in this interlocutory appeal.

[2] Liberty Mutual Insurance has filed a brief of *amicus curiae* in support of Robertson.

associated with the deposit of funds from January 1, 2009, through April 8, 2011, during which time Robertson was a bookkeeper for the Clerk's Office. As a result of the investigation, the SBOA compiled a report in which it stated that Robertson had diverted $61,393.73 from the county using a "checks substituted for cash" scheme. Appellant's App. Vol. II at 29.

[3] On December 10, 2014, the SBOA discussed the report with Robertson. The next day, the SBOA requested that Robertson refund the money to the county. On December 11, the SBOA sent a letter to Jennings County officials and included the report with the letter. In the letter, the SBOA stated that it had also forwarded a preliminary, unverified report "to the office of the Indiana Attorney General and the local Prosecuting Attorney." *Id.* at 28. That letter provided that the "Official Response to this report has not been examined or verified for its accuracy." *Id.* Thereafter, SBOA investigators verified the report on January 21, 2016. On January 22, the SBOA published the signed and verified report and placed a copy of the final report with the OAG.

[4] Based on the results of the special investigation, the OAG filed a complaint to recover public funds against Robertson on May 5, 2017, pursuant to Indiana Code Section 5-11-5-1. In Counts I and II of the complaint, the OAG alleged that Robertson had misappropriated public funds in the amount of $61,393.73.[3] In Count III, the OAG sought treble damages pursuant to the Crime Victim

---

[3] Count I of the complaint related to actions that were alleged to have occurred between January 1, 2009, and December 31, 2010. Count II of the complaint related to actions that were alleged to have occurred between January 1 and April 8, 2011.

Relief Act ("CVRA") in the amount of $184,181.19. The OAG included a copy of the SBOA's published verified report as an exhibit to its complaint.

[5] Thereafter, Robertson filed a motion to dismiss the OAG's complaint pursuant to Indiana Trial Rule 12(B)(6). In her motion to dismiss, Robertson asserted that the OAG's complaint was subject to a two-year statute of limitations and that the OAG had not timely filed its complaint. Specifically, Robertson asserted that the OAG's claim had accrued between January 1, 2009, and April 8, 2011, as that was the time period during which she was employed as a bookkeeper for the Clerk's Office. In the alternative, Robertson argued that, even if the statute of limitations did not begin to run until the OAG had discovered the alleged loss of funds, the OAG's complaint was still time barred because the OAG had actual notice of her alleged offenses when the SBOA had placed its unverified report with the OAG on December 11, 2014.

[6] Following a hearing, the trial court determined that the plain language of Indiana Code Section 5-11-5-1 provided that "the statute of limitations during which the Office of the Indiana Attorney General could institute an action for the recovery of monies commenced on January 22, 2016," when the SBOA placed its verified report with the OAG. *Id.* at 14. The trial court concluded that the OAG had filed its complaint within two years of that date and, accordingly, denied Robertson's motion to dismiss. This interlocutory appeal ensued.

## Discussion and Decision

Robertson contends that the trial court erred when it denied her Indiana Trial Rule 12(B)(6) motion to dismiss the OAG's complaint. As the Indiana Supreme Court has stated:

> We review *de novo* the trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6). *Babes Showclub v. Lair*, 918 N.E.2d 308, 310 (Ind. 2009). Such a motion tests the legal sufficiency of a claim, not the facts supporting it. *Charter One Mortgage Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind. 2007). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. *Id*. at 604-05.

*Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1122 (Ind. 2010). Further, this appeal presents a question of statutory interpretation. "Matters of statutory interpretation, which inherently present pure questions of law, are reviewed *de novo*." *Paquette v. State*, 101 N.E.3d 234, 237 (Ind. 2018).

Robertson specifically contends that the trial court erred when it denied her motion to dismiss because the OAG filed its complaint after the statute of limitations had run. "A motion to dismiss for failure to state a claim [upon] which relief [can] be granted is an appropriate means of raising the statute of limitations." *Brown v. Vanderburg Cty. Sheriff's Dep't*, 85 N.E.3d 866, 869 (Ind. Ct. App. 2017).

[9]     Here, the OAG filed its complaint against Robertson pursuant to Indiana Code Section 5-11-5-1. Accordingly, we begin our analysis by reviewing that statute. As this court has recently stated, "[t]he primary purpose of statutory interpretation is to ascertain and give effect to the intent of the legislature. The best evidence of legislative intent is the statutory language itself, and we strive to give the words in a statute their plan and ordinary meaning." *21st Amendment, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 84 N.E.3d 691, 696 (Ind. Ct. App. 2017) (citations and quotations marks omitted).

[10]    Indiana Code Section 5-11-5-1(a) (2018) provides, in relevant part, that, whenever the SBOA conducts an examination, "a report of the examination shall be made." That report "must include a list of findings and shall be signed and verified by the examiner making the examination." I.C. § 5-11-5-1(a). Further, "[i]f an examination discloses malfeasance, misfeasance, or nonfeasance in office or of any officer or employee, a copy of the report, signed and verified, *shall* be placed by the state examiner with the attorney general[.]" *Id*. (emphasis added).

[11]    Additionally, Indiana Code Section 5-11-5-1(d) provides that, if, during an examination, a field examiner determines that a substantial amount of public funds has been misappropriated and that the malfeasance or misfeasance that resulted in the misappropriation was committed by an officer or an employee of the officer, the examiner "shall" report that determination to the state examiner. However, "[a]fter receiving a preliminary report under subsection (d), the state examiner *may* provide a copy of the report to the attorney

general." I.C. § 5-11-5-1(e) (emphasis added). The attorney general likewise "may" then institute and prosecute civil proceedings against the officer or employee based on the preliminary report. *Id.*

[12] Here, the SBOA conducted its examination and compiled a report in 2014. On December 11, the SBOA sent a letter to Jennings County officials along with that report. In that letter, the SBOA stated that a copy of the report had been sent to the OAG. But the SBOA also stated that the "Official Response to this report has not been examined or verified for its accuracy." Appellant's App. Vol. II at 28. Only some time thereafter, on January 21, 2016, did SBOA examiners verify and sign the report, which the SBOA then placed with the OAG the next day.

[13] In other words, it is clear that the report that the SBOA sent to the OAG on December 11, 2014, was a preliminary report as contemplated by Indiana Code Section 5-11-5-1(e).[4] The SBOA report did not become the final report under Indiana Code Section 5-11-5-1(a) until the examiners verified the report on January 21, 2016. And the OAG did not have notice of the final report until January 22, 2016.

---

[4] To the extent the OAG asserts that it did not receive the preliminary report in 2014, the face of its complaint demonstrates that the SBOA sent the report. Further, to the extent that the OAG asserts that the contents of the audit report are confidential and that the OAG is unable to see the report until the report is published, we can discern no basis to support that argument from Indiana Code Section 5-11-5-1. Rather, the plain language of that statute provides that the state examiner may provide a copy of the preliminary report to the OAG.

[14] On appeal, the parties agree that the OAG's complaint is subject to a two-year statute of limitations. Indeed, there is no dispute that Counts I and II of the complaint are subject to a two-year statute of limitations pursuant to Indiana Code Section 34-11-2-4(2).[5] And both parties agree that Count III is also subject to a two-year statute of limitations. *See Prime Mortg. USA, Inc., v. Nichols*, 885 N.E.2d 628, 638 (Ind. Ct. App. 2008). But the parties dispute when the OAG's claims against Robertson accrued. Robertson asserts that the OAG's claims against her accrued on December 11, 2014, when the OAG received a copy of the preliminary report from the SBOA.[6] However, the OAG contends that its claims did not accrue until January 22, 2016, when it received a copy of the final signed and verified report from the SBOA. Accordingly, in this case of first impression, we must determine whether the OAG's claims under Indiana Code Section 5-11-5-1 accrue and, thus, whether the statute of limitations begins to run when the OAG receives a copy of a preliminary report or whether the claims accrue only when the OAG receives the SBOA's final, verified report. We hold that, as a matter of law, the OAG's claims under Indiana Code Section 5-11-5-1 do not accrue until it receives the SBOA's final report that has been signed and verified.

---

[5] In its response to Robertson's motion to dismiss, the OAG asserted that its complaint against Robertson was subject to a five or six-year statute of limitations pursuant to Indiana Code Section 34-11-2-6(c). However, on appeal, the OAG does not make any argument under that statute. Rather, the OAG simply contends that its action to recover funds "was timely under a two-year statute of limitations." Appellee's Br. at 13 (emphasis removed).

[6] Robertson also briefly asserts that the claims against her accrued between January 1, 2009, and April 8, 2011, as that was the time period when she was employed as a bookkeeper in the Clerk's Office. However, Robertson does not cite any authority to support her contention nor does she argue that the discovery rule does not apply.

[15] Although the SBOA has discretion to provide a copy of the preliminary report to the OAG pursuant to Indiana Code Section 5-11-5-1(e), which discretion the SBOA here exercised in December 2014, those reports are not signed or verified. Such preliminary reports are not final and are subject to change as the SBOA continues its examination. Contrary to Robertson's argument on appeal, we cannot agree that our legislature intended for the statute of limitations to begin to run when the OAG receives a copy of an unverified report that is not yet final and that is still subject to change.

[16] Further, when we interpret a statute, "we are mindful of both what it does say and what it does not say." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195-96 (Ind. 2016) (quotation marks omitted). "We may not add new words to a statute which are not the expressed intent of the legislature." *Ind. Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017). Here, the language of Indiana Code Section 5-11-5-1(e) is merely permissive. Indeed, the SBOA "may" provide a copy of the preliminary report to the OAG, at which point the OAG "may" institute civil proceedings against the defendant. I.C. § 5-11-5-1(e). We cannot read into the statute a requirement where there is not one. If we were to hold that the two-year statute of limitations begins to run when the OAG receives the preliminary report, we would, in effect, oblige the OAG to act on a preliminary report, which would transform a permissive statute into a mandatory statute. In other words, we would require the OAG to take action or otherwise risk having the statute of

limitations run even though action on a preliminary report is not required under the plain language of the statute.

[17] On the other hand, the plain language of Indiana Code Section 5-11-5-1(a) is clear. If, upon the completion of an examination, the SBOA concludes that malfeasance, misfeasance, or nonfeasance in any office or of any officer or employee occurred, a copy of the signed and verified final report "shall" be placed by the SBOA with the OAG. I.C. § 5-11-5-1(a). At that point, the OAG "shall" diligently institute civil proceedings against the defendant. *Id*. It is clear that the OAG is required to act under I.C. § 5-11-5-1(a) after it receives the final report from the SBOA. It is also clear that the legislature has required the OAG to take action only when the OAG receives the final report and not when it receives a preliminary report. Thus, we decline to hold that the statute of limitations begins to run prior to the time the OAG is required to act.

[18] Still, the *amicus* contends that "[a]ny information or knowledge that the State Examiner or his subagents acquire in carrying out [their] duties is imputed to the State" and the OAG. Br. of *Amicus Curiae* at 9. Additionally, Robertson asserts that any information that the Jennings County officials received from the SBOA is also imputed to the OAG.[7] We cannot agree on these facts. Indiana Code Section 5-11-5-1 is clear. The OAG obtains information from the SBOA that requires action from the OAG only when the SBOA has placed a

---

[7] Neither Robertson nor the *amicus* contends that the SBOA or Jennings County is in privity with the OAG, as was the case in *Becker v. State*, 992 N.E.2d 697, 701 (Ind. 2013) (holding that the local prosecutor and the DOC were in privity for purposes of *res judicata*).

signed and verified final report with the OAG. We therefore decline to hold that any information obtained by the SBOA or that the SBOA has given to the county is automatically imputed to the OAG.

[19] Further, Robertson and the *amicus* assert that, by holding that knowledge is not imputed to the OAG and that the statute of limitations does not begin to run until the OAG receives the final report, the SBOA would be able to "indefinitely toll the statute of limitations by delaying publication of the report." Appellant's Br. at 15. Insofar as Robertson and the *amicus* contend that the SBOA can toll the statute of limitations indefinitely by prolonging an investigation, the contrary intent of the General Assembly is clear. The statute of limitations does not begin to run until the OAG receives the final report from the SBOA. Further, Indiana Code Section 5-11-5-1 does not prescribe a time limit for conducting an examination. And, again, we cannot read a requirement into the statute where there is none. Rather, it is clear that the legislature understood that some investigations by the SBOA would take longer than others and, accordingly, declined to place a time restriction on the SBOA to conduct an investigation.

[20] To the extent that Robertson and the *amicus* assert that the SBOA can toll the statute of limitations indefinitely by withholding placement of the final report with the OAG, we again disagree. Indiana Code Section 5-11-5-1(a) requires the SBOA to file a copy of the final signed and verified report "immediately." And, here, SBOA examiners signed and verified the report on January 21, 2016, and then promptly placed a copy with the OAG on January 22.

In sum, we hold that the statute of limitations for the OAG's complaint to recover public funds does not begin to run until the OAG receives the final, verified report from the SBOA. In the present case, the OAG received the final, verified report from the SBOA on January 22, 2016. Accordingly, the OAG's claim accrued and the statute of limitations began to run on that date. And the OAG filed its complaint against Robertson on May 5, 2017, less than two years after the OAG had received the final report. Accordingly, the OAG timely filed its complaint, and the trial court did not err when it denied Robertson's motion to dismiss. We affirm the trial court.

Affirmed.

Pyle, J., and Altice, J., concur.