

# IN THE
# Court of Appeals of Indiana

Daniel N. Boggs,

*Appellant-Respondent*

v.

Brenda Kay Williams,

*Appellee-Petitioner*

and

First Federal Savings Bank,

*Appellee-Respondent*

April 29, 2026

Court of Appeals Case No.
25A-PL-3279

Appeal from the Huntington Circuit Court

The Honorable Davin G. Smith, Judge

Trial Court Cause No.
35C01-2508-PL-781

FILED

Apr 29 2026, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**Brown, Judge.**

Daniel N. Boggs appeals from the trial court's Order on Selection of Auctioneer and Auction of Real Estate. We reverse and remand.

## Facts and Procedural History

On August 4, 2025, Brenda Kay Williams filed a Petition for Partition of Real Estate ("Petition") against Boggs and First Federal Savings Bank ("First Federal," and Boggs and First Federal, together, "Respondents") alleging that she "is the owner and has a right to possession as [a] joint tenant[] with rights of survivorship in certain real estate located in Huntington, Indiana," that "Boggs is currently residing in the Real Estate," and that she is "entitled to compel the partition of the Real Estate pursuant to Ind. Code § 32-17-4-1(a)." Appellant's Appendix Volume II at 9-10. A property card and a commitment for title insurance were attached to the Petition as exhibits.[1] On August 13, 2025, Williams and Boggs filed an "Agreed Stipulation to Appoint Mediator" stating that they "stipulate[d] and agree[d] to appoint Douglas Johnston as Mediator in this cause of action." *Id*. at 42. On August 19, 2025, the court issued an order

---

[1] The commitment stated: "The Title is, at the Commitment Date, vested in: Daniel Boggs and Brenda K. Williams as Joint Tenants With Rights of Survivorship." Appellant's Appendix Volume II at 17.

appointing Johnston as mediator. First Federal filed an answer and affirmative defenses stating that it has a first priority mortgage lien on the real estate at issue. On November 13, 2025, Johnston filed a "Mediator's Report" stating, "[t]he parties appeared and mediated in good faith on November 11, 2025," and "were unable to reach an agreement." *Id*. at 64.

On November 20, 2025, Williams filed a "Motion for Selection of Auctioneer and Auction of Real Estate" ("Motion for Auction") arguing that, "[b]ecause mediation was ultimately unsuccessful, it is appropriate for the Court to order the parties to select an auctioneer to sell the Real Estate, or alternatively, order a sheriff's sale of the Real Estate if the parties do not agree to an auctioneer" and requested that the court order the parties "to select an auctioneer to auction the Real Estate and notify the Court of the same within 30 days of the court's order to select an auctioneer." *Id*. at 65-66.

On November 26, 2025, the court issued an "Order on Selection of Auctioneer and Auction of Real Estate" ("Order for Auction") providing:

> [T]he Court . . . now GRANTS [Williams's] Motion, ORDERS
> that the Real Estate subject to this action be auctioned by an
> auctioneer selected by [Williams] and Respondents within 30
> days, and ORDERS the parties to notify the Court of their
> selection within 30 days after the Court's Order. In the event of
> the parties' failure to do so, the Court shall order the Huntington
> County Sheriff to sell the property.

*Id*. at 69.

On December 1, 2025, Boggs filed an answer and affirmative defenses to the Petition. Also on that date, Boggs filed "Respondent, Daniel N. Boggs' Counterclaim" (the "Counterclaim"). *Id*. at 75. Boggs alleged that he and Williams "were in a romantic relationship and lived together between 2016 and 2025," "Williams is a licensed real estate agent, and [he] had utilized her services to purchase various properties during that time," he "held sole title to the property when his relationship with Williams commenced," "in 2020 the house and barn on the Property burned to the ground," and "[t]hereafter, [he] contributed approximately $500,000 and Williams contributed approximately $95,000 to reconstruct a house and barn on the Property." *Id*. at 75.

Boggs also alleged that, "[i]n August 2020 . . . Williams presented [him] with a purported deed consisting solely of a single page which Williams appears to have caused to be prepared in part, utilizing a lawyer Williams consistently worked with in her business as a real estate agent," that he "specifically asked Williams what 'Joint Tenants with Rights of Survivorship' ('JTRS') meant," and that Williams "indicated it was solely to 'protect her' if Boggs died, so his family could not 'screw her', and that [she] would get back the money she put into the rebuilding of the house and barn." *Id*. at 75-76. He alleged that, "[b]ased on Williams'[s] representations, as to the consequences of the purported deed, in reliance on [her] superior knowledge as a real estate agent and, in reliance on [her] ongoing representation of [him] as his realtor for property transactions, [he] signed the single page purported deed," and that, "[h]ad [he] been aware that the designation 'Joint Tenants with Rights of

Survivorship' in the single page purported deed presented to him had legal implications with respect to partition, among others, he would have never agreed to execute the purported deed." *Id*. at 76. He argued, "[n]o notary nor witnesses other than Boggs and Williams were present when the single page purported deed was executed by Boggs." *Id*. The Counterclaim alleged Count I, "fraudulent nondisclosure"; Count II, "fraudulent inducement"; Count III, "breach of fiduciary duty"; Count IV, "to invalidate and/or set aside deed"; and Count V, "material mistakes of fact." *Id*. at 76-82.

[7] Also on December 1, 2025, Boggs filed a "Motion to Reconsider, Vacate, or Stay Order for Auction of Real Estate and Request for Case Management Conference" ("Motion to Reconsider") arguing that Williams "lacks the interest in the subject property required by I.C. 32-17-4-1(a)(1)(A)," "ownership disputes must be resolved before property can be sold," the court's Order for Auction "is therefore premature, as it presumes undisputed ownership and standing without first resolving these threshold disputes," and "the parties have not complied with the mandatory statutory requirements under Indiana Code § 32-17-4-2.5, which are prerequisites to any order for an auction." *Id*. at 85-86. The Motion to Reconsider stated that Boggs "incorporates as if set forth fully herein the facts, defenses and counter-claims of his *Answer* and *Counter-Claims* that are attached hereto," and Boggs's answer and the Counterclaim were attached as exhibits. *Id*. at 85. Boggs requested the court to vacate its Order for Auction and stay any sale or auction pending resolution of his claims

challenging Williams's ownership interest.  The trial court did not rule on the Motion to Reconsider.  Boggs appeals the trial court's Order for Auction.

## Discussion

[8]    Boggs argues that "Indiana law limits partition relief only to true co-tenants," he "squarely placed Williams's title at issue," and the Order for Auction "was improper and deprived [him] of his right to have William[s]'s status as co-tenant determined."  Appellant's Brief at 17, 20.  He further contends that the court granted Williams's Motion for Auction "fourteen days before [his] response to the motion was due."  *Id*. at 23.  He also argues that "[n]o appraisal report was filed before mediation occurred or before the [Order for Auction] was entered," that "while [he] agreed to go to mediation, there is nothing in the record showing that he expressly waived the appraisal requirement," that "[t]here is certainly nothing in the record showing that he agreed that if mediation failed, he was consenting to an order of partition," and that the court's "Mediation Order did not include the mandatory language and admonitions."  *Id*. at 26-27.

[9]    Williams responds that, "[t]he partition statute requires that, at the time the partition action is filed, the person must be a joint tenant or co-tenant," her Petition "establishes that she is a joint tenant with the Right of Survivorship," and she provided a copy of the property record card and title search.  Appellee Williams's Brief at 15, 17.  She further asserts, "[b]y stipulating to proceed to mediation, Boggs was also stipulating that . . . they had a joint interest in the Real Estate under the Indiana Partition Statute that was the subject of the

partition mediation." *Id*. at 23. She argues, "the sale of the Real Estate by and through the [Order for Auction] does not result in any prejudice [to] Boggs' Counterclaims as he will still have his damage claims after the sale of the Real Estate." *Id*. at 26. First Federal filed an appellee's brief stating that it has a first priority mortgage lien on the property at issue and that the issues which Boggs raises in his appellant's brief do not affect its interest.

[10] To the extent we must interpret statutes related to partition proceedings, we aim to determine and give effect to the intent of the legislature. *Ind. Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017). We start with the plain language of the statute, giving its words their ordinary meaning and considering the structure of the statute as a whole. *Id.* "To the extent ambiguity exists, we determine and give effect to the intent of the legislature as best it can be ascertained." *Id.*

[11] Ind. Code Chapter 32-17-4 governs partition proceedings. Ind. Code § 32-17-4-1(a) provides:

> The following persons may compel partition of land held in joint tenancy or tenancy in common as provided under this chapter:
>
> (1)    A person that holds an interest in the land as a joint tenant or tenant-in-common either:
>
>    (A)    in the person's own right; or
>
>    (B)    as executor or trustee.

[12] Ind. Code § 32-17-4-2(b) provides that a petition to compel partition must contain "(1) A description of the premises. (2) The rights and titles in the land of the parties interested." Ind. Code § 32-17-4-2(c) provides, "[a]t the time a person files a petition . . . , the person shall cause a title search to be made regarding the land that is the subject of the partition" and "shall file a copy of the results of the title search with the court."

[13] Ind. Code § 32-17-4-2.5 is titled "Mediation; acquisition of jurisdiction" and provides:

> (a) Not later than forty-five (45) days after the court has acquired jurisdiction over all the parties who have an interest in the property that is the subject of the action, the court shall refer the matter to mediation in accordance with the Indiana rules of alternative dispute resolution.
>
> (b) Except as provided in subsection (c), mediation of the case may not begin until an appraiser files an appraisal report with the court.
>
> (c) If each party waives the appraisal of the property, the case may move to mediation without the filing of an appraisal report.
>
> (d) In its order referring the matter for mediation, the court shall advise the parties:
>
> > (1) that the real or personal property will be sold if the parties are unable to reach an agreement not later than sixty (60) days after the order is issued; and
> >
> > (2) that the parties may agree upon a method of the sale of the property, and if the parties do not agree upon a method of the sale of the property, the property may

be sold at public auction or by the sheriff under subsection (g).

(e)     Except if the parties agree to waive the appraisal of the property, not later than thirty (30) days after the court acquires jurisdiction under subsection (a), the court shall appoint a licensed real estate appraiser to appraise the property. The appraiser shall file the appraisal with the court.

\* \* \* \* \*

(g)     If an agreed settlement is not reached in mediation or if the parties agree upon a method of sale, the court shall not later than thirty (30) days after the date the mediator files a report with the court that the mediation was not successful, or the parties file their agreement establishing the method of sale:

(1)     order the property to be sold using the method that all the parties agree upon; or

(2)     order the parties to select an auctioneer to sell the property. If the parties fail to select an auctioneer not later than thirty (30) days after the court's order to select an auctioneer, the court shall order the sheriff to sell the property . . . .

\* \* \* \* \*

(l)     After deduction of the amounts described in subsections (h), (i), and (j) and the reasonable expenses of the sale, the court shall divide the proceeds of the sale among the remaining property owners in proportion to their ownership interest.

The statutory procedures are designed to protect the rights of all parties to a partition action. *Hay v. Hay*, 885 N.E.2d 21, 24 (Ind. Ct. App. 2008).

[14]     The Indiana Supreme Court long ago held:

The primary object of an action in partition is, not to create or vest a new title, nor to settle conflicting titles, but to sever the unity of possession, and allot the respective shares. It proceeds upon the theory that the parties have title to the property which they hold in common. It is nevertheless true that in a proceeding for partition . . . the question of title may be presented by the pleadings, and that question tried and settled.

*Thorp v. Hanes*, 107 Ind. 324, 6 N.E. 920, 922 (1886) (citations omitted).

[15] "A joint tenancy is a single estate in property owned by two or more persons under one instrument or act." *Flatrock River Lodge v. Stout*, 130 N.E.3d 96, 99 (Ind. Ct. App. 2019). "Upon the death of any one of the tenants, his share vests in the survivors." *Id*. at 99-100. "When a joint tenancy is created, each tenant acquires an equal right to share in the enjoyment of the land during their lives." *Id*. at 100. This Court has stated:

Once a joint tenancy relationship is found to exist between two people in a partition action, it is axiomatic that each person owns a one-half interest. . . . Regardless of who provided the money to purchase the land, the creation of a joint tenancy relationship entitles each party to an equal share of the proceeds of the sale upon partition. Equitable adjustments to cotenants' equal shares are allowed when the cotenants hold the property as tenants in common, not when they hold as joint tenants.

*Cunningham v. Hastings*, 556 N.E.2d 12, 13-14 (Ind. Ct. App. 1990) (citation omitted).

[16] The record reveals that Williams filed her Petition alleging she "is the owner and has a right to possession as joint tenants with rights of survivorship in

certain real estate" and she is "entitled to compel the partition of the Real Estate pursuant to Ind. Code § 32-17-4-1(a)." Appellant's Appendix Volume II at 9-10. Subsequently, on November 20, 2025, Williams filed her Motion for Auction requesting that the court order that the property be auctioned by an auctioneer to be selected by the parties. Ind. Trial Rule 6(D) provides that a response to a pleading or a motion must be filed within twenty days after service of the pleading or motion. However, on November 26, 2025—before the expiration of the twenty-day period—the trial court issued the Order for Auction ordering that the property be auctioned. Boggs filed his Motion to Reconsider on December 1, 2025, asserting that Williams does not have an "interest in the subject property required by I.C. 32-17-4-1(a)(1)(A)" and incorporating by reference the allegations in his Counterclaim which includes allegations of fraudulent nondisclosure, fraudulent inducement, and breach of fiduciary duty. *Id*. at 85. The trial court issued its Order for Auction before Boggs filed a response to Williams's Motion for Auction, and it did not grant Boggs's Motion to Reconsider or hear the parties' competing claims regarding Williams's interest in the property. We agree with Boggs that he did not have the opportunity "to have William[s]'s status as co-tenant determined." Appellant's Brief at 20.

[17] Further, contrary to Williams's suggestion, Boggs did not effectively concede, by virtue of his mere participation in mediation, that Williams holds an interest in the property at issue as a joint tenant. The stipulation filed by Boggs and Williams only specified that they agreed to the

appointment of Johnston as mediator and did not state they agreed that Williams was a person that holds an interest in the land as a joint tenant. Additionally, we do not find persuasive Williams's argument that the sale of the property would not result in any prejudice to Boggs's claims. Boggs's Counterclaim requests that the trial court declare the 2020 deed, referring to him and Williams as joint tenants with rights of survivorship, to be invalid, and thus to find that Williams is not a joint tenant and not a person who may compel partition under Ind. Code Chapter 32-17-4. We also note that the record does not reflect that the court followed Ind. Code § 32-17-4-2.5, as it does not show that the it appointed a licensed real estate appraiser to appraise the property and the appraisal was filed with the court prior to mediation or that the parties waived that requirement, as contemplated by subsections (b), (c), and (e), and the court's order appointing a mediator did not include the advisements set forth in subsection (d).

[18] Based on the record, we reverse the trial court's Order for Auction and remand for a hearing at which the parties may present evidence in support of their claims and for proceedings consistent with Ind. Code Chapter 32-17-4.[2] We render no opinion as to the merits of the parties' claims.

---

[2] Williams filed an appellee's appendix containing a quitclaim deed, an appraisal, a mortgage, and a construction contract. Boggs filed a Motion to Strike arguing that these documents were not presented to the trial court and are not part of the record on appeal and that he did not have an opportunity to respond to them or present his own evidence. We grant Boggs's Motion to Strike. *See* Ind. Appellate Rule 50(A)(1) ("The purpose of an Appendix in civil appeals . . . is to present the Court with copies of only those parts of

For the foregoing reasons, we reverse and remand for further proceedings.

Reversed and remanded.

Altice, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

William A. Ramsey
David C. Pricer
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE BRENDA KAY WILLIAMS

Robert W. Eherenman
Hannah L. Alderks
HallerColvin PC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE FIRST FEDERAL SAVINGS BANK

J. Blake Hike
Michael C. Ross
Amanda C. Delekta
Carson LLP
Fort Wayne, Indiana

---

the Record on Appeal that are necessary for the Court to decide the issues presented.”); Ind. Appellate Rule 27 (“The Record on Appeal shall consist of the Clerk’s Record and all proceedings before the trial court . . . , whether or not transcribed or transmitted to the Court on Appeal.”); *Benziger v. Radabaugh*, 267 N.E.3d 1149, 1155 (Ind. Ct. App. 2025) (“Moreover, the plain text of Appellate Rule 50(A) requires materials included in the Appendix be part of the record.”).