ATTORNEYS FOR PETITIONER:
**JOHN P. LOWREY**
**M. BRIAN COPPINGER**
OFFICE OF CORPORATION COUNSEL
Indianapolis, IN

ATTORNEY FOR RESPONDENT:
**PAUL M. JONES**
JONES PYATT LAW, LLC
Greenwood, IN

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| MARION COUNTY ASSESSOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SQUARE 74 ASSOCIATES, LLC, | ) | Case No. 22T-TA-00009 |
| | ) | |
| Respondent. | ) | |

FILED
Feb 14 2024, 10:35 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**February 14, 2024**

MCADAM, J.

The Marion County Assessor has challenged the final determination of the Indiana Board of Tax Review ("Indiana Board") valuing Square 74 Associates, LLC's leasehold estate in the World of Wonders Garage at Circle Center Mall in downtown Indianapolis for the 2010 through 2018 assessment years. The Assessor presents two issues for the Court's resolution. The first is whether the Indiana Board abused its discretion when it combined two valuation estimates, one for the land and one for the improvements, that were prepared by Square 74 using different valuation methods to establish the market value-in-use of Square 74's leasehold estate for 2010. The second

is whether the Indiana Board acted contrary to law when it then applied Indiana Code §

6-1.1-15-17.2 (the "burden-shifting statute") using the value it determined for 2010 as

the prior year assessment for 2011 through 2018. Having considered both of the

Assessor's challenges, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

During the years at issue, the Indianapolis Department of Metropolitan

Development and Indianapolis Downtown, Inc. (collectively, "the City") owned a multi-

level parking garage, commonly known as the World of Wonders Garage, located at the

Circle Center Mall in downtown Indianapolis. Square 74 leased space from the City on

the ground floor of the garage and, in turn, sub-leased it to several entities for use as

five separate restaurants. Each of the five restaurant spaces was treated as a discrete

parcel and assessed to Square 74 for property tax purposes. The assessments valued

both the improvements and the underlying land.

Square 74 appealed the assessments for all five parcels for tax years 2010

through 2018 first to the Marion County Property Tax Assessment Board of Appeals and

then to the Indiana Board. The combined assessed value for the five parcels for the

nine tax years ranged from $4,734,400 to $5,281,900.

The Indiana Board held a consolidated hearing on all of Square 74's appeals at

the joint request of the parties. At that hearing, Square 74 presented an appraisal report

that valued its leasehold interest for each of the nine years at issue as well as the

testimony of the appraiser who prepared the report. The appraiser prepared separate

cost and income approach estimates to value the subject property, reconciling the

results into a final combined valuation estimate for each year that ranged from

2

$3,350,000 in 2010 to $3,650,000 in 2018.[1] In arriving at the final values, the appraiser maintained that the land had no value to Square 74 because it reverted to the City at the end of the lease. Nonetheless, the appraiser prepared a separate valuation of the land using the sales comparison approach to use in calculating his income approach estimate.[2] The appraiser used the sales of four comparable properties to estimate the market value of the land during the nine tax years, resulting in a value range of $720,195 to $1,063,824.

The Assessor responded with several criticisms of Square 74's appraisal report and offered testimony from a valuation analyst in his office who further critiqued the appraisal. The Assessor did not offer its own appraisal or any other evidence indicating the property's value to the Indiana Board.

In its final determination, the Indiana Board evaluated each of the Assessor's criticisms of Square 74's appraisal and largely rejected them as unfounded. The Indiana Board then turned to Square 74's appraisal. Although it did not find Square 74's

---

[1] The cost approach "estimates the value of land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value." 2002 REAL PROPERTY ASSESSMENT MANUAL ("2002 Manual") (2004 Reprint) (incorporated by reference at 50 IND. ADMIN. CODE 2.3-1-2 (2002 Supp.) (repealed 2010)) at 3; 2011 REAL PROPERTY ASSESSMENT MANUAL ("2011 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (amended 2020)) at 2. The income approach is used for income producing properties that are typically rented, converting an estimate of income or rent the property is expected to produce into a property value through a mathematical process known as capitalization. 2002 Manual at 3; 2011 Manual at 2.

[2] The sales comparison approach "estimates the total value of the property directly by comparing it to similar, or comparable, properties that have sold in the market." 2002 Manual at 3; 2011 Manual at 2. Here, the appraiser converted the land value he determined using the sales comparison approach into the market rates for the ground lease by applying a capitalization rate. The resulting market ground lease rental rates ranged from $32,580 to $48,125. He then deducted those ground lease rates from his income valuation estimate as an operating expense.

assertion that the land held no value to be probative, it found Square 74's valuation of the improvements under the cost approach and its valuation of the land under the sales comparison approach to be probative. As such, the Indiana Board found that the appraiser's land value estimate of $720,195 and his cost estimate of the improvements of $3,228,702, when combined, properly established the subject property's market value-in-use for the first year at issue, 2010, at $3,949,000.[3]

The Indiana Board then determined that the assessments for all of the remaining years under appeal (*i.e.,* 2011 through 2018) should be reverted to the 2010 value it had determined. The Indiana Board's decision was predicated on its application of the burden-shifting statute, Indiana Code § 6-1.1-15-17.2. It determined that neither party could meet their burden under the statute and that the statute required reversion to the prior year assessment.[4] The Indiana Board determined that the Assessor could not meet his burden because he did not offer any valuation evidence to support his assessments. And, it determined that Square 74 could not meet its burden because it attributed no value to the land in claiming the property's ultimate valuation was

---

[3] It is important to note that the Indiana Board used the appraiser's land valuation estimate to determine the property's market value-in-use and not the capitalized value of the land used to estimate the market ground lease rental rates. These values differ significantly and may not be interchangeable.

[4] The burden-shifting statute has undergone several iterations since its 2009 enactment. *See, e.g.*, IND. CODE § 6-1.1-15-1(p) (eff. July 1, 2009) (amended 2011); IND. CODE § 6-1.1-15-17 (2011) (repealed 2012); IND. CODE § 6-1.1-15-17.2 (2014) (repealed 2022). In this case, the Indiana Board's final determination indicates it applied the 2021 version of this statute. That version of the statute requires an assessor to prove that an appealed assessment is "correct" when an assessment increases by more than 5% over the previous year assessment. *See* IND. CODE § 6-1.1-15-17.2(a) (2021) (repealed 2022) If the assessor is unable to meet that burden, the taxpayer is afforded an opportunity to prove the correct assessment. *See* I.C. § 6-1.1-15-17.2(b). Indiana Code § 6-1.1-15-17.2 provides that if neither the assessor nor the taxpayer meets their burden, the challenged assessment reverts to the prior year assessment. I.C. § 6-1.1-15-17.2(b).

$3,450,000 for 2011.

The Assessor then initiated this original tax appeal.

## STANDARD OF REVIEW

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, the provisions of which closely mirror those controlling the judicial review of administrative decisions governed by Indiana's Administrative Orders and Procedures Act ("AOPA"). *Compare* IND. CODE § 33-26-6-6(e) (2024) *with* IND. CODE § 4-21.5-5-14(d) (2024). Under Indiana Code § 33-26-6-6, the party seeking to overturn a final determination of the Indiana Board bears the burden of demonstrating its invalidity. I.C.§ 33-26-6-6(b). The challenger must demonstrate that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. I.C. § 33-26-6-6(e)(1)-(5).

The Legislature has specifically designated the Indiana Board as the trier of fact, charged with determining the relevance and weight to be assigned to the evidence before it. *See* IND. CODE § 6-1.1-15-4(p) (2024). Like the review of administrative decisions subject to AOPA, this Court reviews legal conclusions *de novo* but affords deference to the factual determinations of the Indiana Board if they are supported by substantial and reliable evidence. *See* I.C. § 33-26-6-6(e)(5); *Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017) (articulating the standard of review of administrative actions under AOPA); *Kellam v. Fountain Cnty.*

5

*Assessor*, 999 N.E.2d 120, 122 (Ind. Tax Ct. 2013) (articulating the standard of review for Indiana Board decisions). The Court may not substitute its judgment for that of the Indiana Board by reweighing the evidence or reevaluating the credibility of witnesses. *See* IND. CODE § 33-26-6-3(b) (2024); *Kellam*, 999 N.E.2d at 122.

## DISCUSSION

### Combination of the Taxpayer's Land and Improvements Valuations

The Assessor first argues that it was an abuse of discretion for the Indiana Board to use elements from two different aspects of Square 74's appraisal to determine the value of the subject property. The Assessor's argument is premised on his position that, while Square 74 may have valued the land in the course of completing its income approach, the Indiana Board could not combine that land value with the improvements value determined under the cost approach. The Court does not find the Assessor's argument persuasive.

The Assessor concedes that the Indiana Board is empowered to use evidence in the record to establish the market value-in-use of a property and is not bound to the ultimate valuations proffered by the parties when the taxpayer has the burden in the first instance.[5] (Pet'r Br. at 6 (citing *CVS Corp. v. Monroe Cnty. Assessor*, 83 N.E.3d 1286, 1291 (Ind. Tax Ct. 2017)).) He contends instead that the Indiana Board is precluded from combining the land value developed for use in Square 74's income approach

[5] Before its repeal in 2022, Indiana Code § 6-1.1-15-17.2 provided an exception to this rule. There, the language of the statute specifically circumscribed the Indiana Board's discretion as the trier of fact. It limited the Indiana Board to accepting or rejecting as persuasive the assessment values put forward by the parties because of the statutory requirement for each party "to prove that their proffered assessment is correct." *See Southlake Indiana, LLC v. Lake Cnty. Assessor*, 174 N.E.3d 177, 180 (Ind. 2021). That limitation does not control here as the parties and the Indiana Board agreed that the burden-shifting statute did not apply to the 2010 assessment.

6

estimate with the improvements value estimate developed using the cost approach. The Assessor's critique is misplaced.

As explained in Indiana's assessment manual, as well as numerous other states' tax court decisions, under the cost approach methodology, land is valued separately from the improvements. *See, e.g.,* 2021 REAL PROPERTY ASSESSMENT MANUAL (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2020)) at 2 (explaining that "the *cost approach*, estimates the value of the land as if vacant and then adds the depreciated cost new of the improvements to arrive at a total estimate of value"); *accord Medtronic Inc. v. Cnty. of Anoka*, No. 02-CV-20-1935, 2023 WL 3471714, *12-13 (Minn. Tax May 15, 2023); *Stafford Hills Props. LLC v. Clackamas Cnty. Assessor*, No. TC-MD-140184N, 2015 WL 2398228, *11 (Or. T.C. May 18, 2015); *Int'l Flavors & Fragrances Inc. v. Union Beach Borough*, 21 N.J. Tax 403, 417 (2004). Land is valued using the sales comparison approach or one of several other valuation methods depending on the available data. S*ee Green Eagle Prop. Res., LP v. Mansfield Twp.*, Nos. 009897-2014, 003285-2015, 002372-2016, 001715-2017, 004237-2018, 2021 WL 4167094, at *22 (N.J. Tax Ct. Sept. 13, 2021) (citing APPRAISAL INSTITUTE, THE APPRAISAL OF REAL ESTATE 36, 364-65 (14th ed. 2013). Improvements are valued by estimating the depreciated "reproduction or replacement cost of the buildings and other improvements." *See id.* at *18 (internal quotation marks and citation omitted). Those two values are then added together to establish a value for the whole property. *Id.*

In this case, Square 74 presented an appraisal estimating the value of the subject property. That appraisal contained a land value estimate developed using the sales comparison approach and an improvements value estimate developed using the

cost approach. Square 74 believed the land value should not be included. The Indiana Board disagreed. By adding the two valuations (*i.e.*, land and improvements) together, the Indiana Board simply exercised its discretion as the finder of fact to weigh the evidence before it and determine the market value-in-use of the subject property. It found the separate valuations of the land and the improvements persuasive, and the Assessor did nothing to demonstrate that that evidence was unreliable or otherwise unpersuasive. The addition of a land value estimated using the sales comparison approach to an improvements value estimated using the cost approach is consistent with accepted practice. The Assessor's objection to that combination conflates the land value prepared for use in Square 74's income approach with the income approach estimate itself. (*See* Pet'r Br. at 7; Pet'r Reply Br. at 3.) The record is clear that the land value estimate used by the Indiana Board was prepared separately using the sales comparison approach, not the income approach.

Moreover, the Indiana Board's determination is consistent with its statutory charge to support its findings of ultimate fact (*i.e.*, the market value-in-use of the subject property) with its findings of basic facts (*i.e.*, Square 74's land value estimate and improvements value estimate). *See, e.g.*, IND. CODE § 6-1.1-15-4(j) (2024). Much like LEGO bricks, basic facts form the buildings blocks that the trier of fact assembles to create its ultimate findings. *See Allen v. Scherer*, 452 N.E.2d 1031, 1034 (Ind. Ct. App. 1983) ("Basic findings are facts which the [administrative] agency determines, after considering all the evidence, to be true and relevant to the factual determinations which must be made in order to decide the case. Ultimate findings are conclusions which flow rationally from the basic findings.") (citation omitted); *accord Pack v. Indiana Fam. &*

8

*Soc. Servs. Admin.*, 935 N.E.2d 1218, 1221-24 (Ind. Ct. App. 2010). That is precisely what the Indiana Board did here. It took the basic facts of the land value and the improvements value and assembled them into its ultimate finding of the market value-in-use of Square 74's property.

The Assessor's burden for overturning the Indiana Board's decision on appeal is well established. He must show that the decision "is clearly against the logic and effect of the facts and circumstances before [the Indiana Board.]" *Kooshtard Prop. I, LLC v. Monroe Cnty. Assessor*, 38 N.E.3d 750, 753 (Ind. Tax Ct. 2015) (citation omitted). The Indiana Board's decision must be "patently unreasonable . . . without consideration of the facts and in total disregard of the circumstances." *Spirited Sales*, 79 N.E.3d at 380 (internal quotation marks and citation omitted). Here, the Indiana Board's decision was reasonable, consistent with accepted practice, and within its discretion as the trier of fact. Consequently, the Indiana Board did not abuse its discretion.[6]

**Application of the Burden-Shifting Statute to the Taxpayer's Consolidated Appeal**

In an alternative argument, the Assessor contends that the Indiana Board erred when it ordered Square 74's 2011 through 2018 assessments to revert to the $3,949,000 value that was determined for 2010. He argues that, in ordering the

---

[6] The Assessor also appears to make a related argument that Square 74 failed to sustain its burden to rebut the presumption that the assessment is correct because Square 74 did not make a *prima facie* case. (*See* Pet'r Reply Br. at 4-5.) He appears to argue that the Indiana Board was limited to upholding his original assessment for that reason because Square 74's proffered valuation lacked a land value and Square 74 never requested that the land value be included in its valuation. (*See* Pet'r Br. at 6; Pet'r Reply Br. at 4-5.) But the Assessor has conceded that the Indiana Board is allowed to weigh all of the evidence before it and adjust the valuations offered by the parties in order to determine a property's market value-in-use. *See supra* p. 6. Therefore, to the extent that the Assessor argues that the Indiana Board was limited to choosing the property value proffered by Square 74 and could not weigh the evidence presented to determine the value itself, he has already conceded that the Indiana Board is not so limited.

reversion, the Indiana Board misapplied the provisions of Indiana Code § 6-1.1-15-17.2 and, as a result, unfairly shifted the burden of proof to him post-hearing and mid-decision without any notice.

Resolution of this issue turns on the question of what qualifies as a prior tax year assessment under Indiana Code § 6-1.1-15-17.2, as that is the starting point for determining the applicability of the burden-shifting statute in the first instance and for applying the statute's reversionary clause in the second. Typically, the prior tax year assessment will be the original assessment as issued by the county assessor. However, Section 17.2 acknowledges the possibility that the original assessment might have changed after the county assessor issued it and allows for three alternative values:

> In calculating the change in the assessment for purposes of this section, the assessment to be used for the prior tax year is the original assessment for that prior tax year or, if applicable, the assessment for that prior tax year:
>
> (1) as last corrected by an assessing official;
>
> (2) as stipulated or settled by the taxpayer and the assessing official; or
>
> (3) as determined by the reviewing authority.

IND. CODE § 6-1.1-15-17.2(a) (2021) (repealed 2022).[7] Which of these alternatives applies depends on the facts and circumstances of the particular case.

Here, the parties disagree about the scope of the third alternative—a prior year

---

[7] The Court notes that the definition of "assessment for [the] prior tax year" is included in two places in the statute – subsection (a) dictates whether the burden-shifting statute applies in the first instance and subsection (b) triggers the application of the reversionary clause. *See* I.C. § 6-1.1-15-17.2(a)-(b). While the language defining prior year assessment varies slightly between the two subsections, the differences are not material to the question in this case. For simplicity, the Court's analysis focuses on the definition related to application of the burden-shifting statute in the first instance, but it applies equally to both subsections.

tax assessment "as determined by the reviewing authority." Both parties agree that the Indiana Board is a "reviewing authority" and that the resolution of the appeal in this case "determined" an assessment. But they disagree about when the reviewing authority's determination must be made. The Assessor contends that Section 17.2 only permits the use of a prior year assessment if it was determined before the taxpayer's appeal is initiated. He takes exception to the Indiana Board's use of the new 2010 assessment announced for the first time in its final determination as a prior year tax assessment "determined by the reviewing authority." The Court disagrees.

The Court's analysis begins and ends with the language of Indiana Code § 6-1.1-15-17.2 itself. Statutory words and phrases are to be given their "clear and unambiguous meaning" and understood "in their plain, ordinary, and usual sense." *Southlake Indiana, LLC v. Lake Cnty. Assessor*, 174 N.E.3d 177, 179 (Ind. 2021) (citation omitted). The language of Section 17.2 is straightforward. There is nothing that limits the time period for considering assessments "determined by the reviewing authority." The statute makes no distinction between assessments "determined" before or after the initiation of the taxpayer's appeal. This silence is dispositive. By the plain language of the statute, the Indiana Board is a "reviewing authority" that has "determined" the assessment for a prior tax year. That that determination was made during the course of an administrative appeal is not part of the statutory inquiry. The $3,949,000 value therefore became Square 74's 2010 assessment "as determined by the reviewing authority" and the starting point from which Square 74's 2011 appeal was to proceed. To impose a limitation like the one urged by the Assessor would require adding words to the statute that are not there. Courts may not do this. *See Kitchell v.*

11

*Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013) ("Court's may not 'engraft new words' onto a statute or add restrictions where none exist") (citation omitted).

While the impact is great in this case because it affects eight tax years, the rationale for applying the statute's plain language is nonetheless sound. It facilitates the resolution of claims involving multiple tax years and common issues in a single appeal rather than through a series of separate proceedings. And it is consistent with broader goals of judicial economy and efficiency.

The Assessor objects that he did not have notice that the burden-shifting statute would apply in this case and was therefore unfairly surprised when the burden of proof shifted to him in the middle of the appeal.[8] Yet, the Indiana Board specifically raised the question of the burden of proof at the outset of the hearing and asked the parties if they agreed which party had the burden "at least with regard to the first year[.]" (Cert. Admin. R. at 2611.) Both parties affirmed that the taxpayer had the burden, and the record reveals no attempt by the Assessor to seek clarification as to any later year.[9] Ultimately,

---

[8] The Assessor has made it clear that he is not raising a due process claim. (*See* Oral Arg. Tr. at 46-47.) The Court thus leaves aside the question of whether the application of the burden-shifting statute could conflict with due process or other constitutional limitations as that question was not raised here.

[9] This is not the first time that the Indiana Board has stated that the burden-shifting statute can apply to subsequent years after it has determined the assessment for an earlier year. *See, e.g., CVS Corp. #6640-02 v. Madison Cnty. Assessor*, Nos. 48-003-11-1-4-00661-16, 48-003-12-1-4-00660-16, 48-003-13-1-4-00659-16, 48-003-14-1-4-00654-16, 48-003-15-1-4-00658-16, 48-003-16-1-4-00651-17, at 38-39 ¶ 113 (Ind. Bd. Tax Rev. Oct. 15, 2019), available at https://www.in.gov/ibtr/files/CVS_6640_48-003-11-1-4-00661-16.pdf (last visited 2/13/2024) (indicating that "[t]he burden for later years necessarily depends [on] how [the first year is] resolve[d]"); *accord DeDomenic Revocable Living Tr. v. Bartholomew Cnty. Assessor*, Nos. 03-011-12-1-5-10001, 03-011-13-1-5-00001, 03-011-14-1-5-10027-15, 03-011-15-1-5-00132-15, at 12 ¶ 47 (Ind. Bd. Tax Rev. Apr. 3, 2017), available at https://www.in.gov/ibtr/files/Ellen-W-DeDominic-Revoc-Living-Trust-03-011-12-1-5-10001-etc.pdf (last visited 2/13/2024) ("The parties dispute who had the burden of proof for 2012; *Shadeland Station Apartments I, LLC v. Marion Cnty. Assessor*, Nos. 49-400-08-1-4-00007, 49-400-09-1-4-90005-15, 49-400-10-1-4-82831-15, 49-400-11-1-4-82221-15, 49-400-08-1-4-00008, 49-400-09-1-4-90004-15, 49-400-

12

the procedural uncertainty the Assessor alleges here stems from his own litigation strategy. He agreed to a consolidated resolution of all nine years of Square 74's tax appeals and did not present any valuation evidence of his own during the administrative proceedings in this matter. Not only was the Assessor presumed to know and understand the law that was applicable to the case, he was empowered to make strategic decisions about how best to try the case in light of that law. The Assessor took a substantial risk by electing not to present any evidence of value as part of his case, particularly given the fact that the taxpayer presented an expert appraisal covering all nine years at issue. Regardless of which party had the burden in the first instance, the Assessor was on notice that the Indiana Board might be persuaded by the taxpayer's valuation evidence. The strategy may have ultimately proved unsuccessful, but it is not a basis for overturning the Indiana Board's decision.

To prevail on this claim, the Assessor must demonstrate that the Indiana Board's final determination violated a statute, a constitutional provision, a legal principle, or a rule of substantive or procedural law. *See Fraternal Order of Eagles No. 3988, Inc. v. Morgan Cnty. Prop. Tax Assessment Bd. of Appeals*, 5 N.E.3d 1195, 1200 (Ind. Tax Ct. 2014). Because the Court agrees with the Indiana Board's reading of the burden-shifting statute, the Court rejects the Assessor's contention that the Indiana Board's application of Indiana Code § 6-1.1-15-17.2 was contrary to law.

**CONCLUSION**

The Assessor has not demonstrated to the Court that the Indiana Board erred

10-1-4-82830-15, 49-400-11-1-4-82220-15, at 15 n.6 (Ind. Bd. Tax Rev. Mar. 10, 2016), available at https://www.in.gov/ibtr/files/Shadeland_Station_49-400-08-1-4-00007_etc.pdf (last visited 2/13/2024).

13

when it established the market value-in-use of Square 74's leasehold estate or that it misapplied Indiana Code § 6-1.1-15-17.2. Consequently, the Court AFFIRMS the Indiana Board's final determination in its entirety.